IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JAYSON S. BAYLEY                         PLAINTIFF

v.                    CIVIL NO. 07-5126

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                     DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act).

**Procedural Background:**

Plaintiff filed the current DIB and SSI applications on January 29, 2004, alleging an inability to work since May 20, 1998, due to temporomandibular joint disorder (TMJ) and chronic headaches, depression, bulging disc spurs, arthritis of the spine and hands, low back pain and right leg pain.[1] (Tr. 374, 408, 532). Plaintiff's application was denied initially and on

---

[1] Plaintiff alleged in his applications for benefits that he had been disabled since May 20, 1998; however, the ALJ noted plaintiff had previously received disability benefits from November 1998 through January 2002. (Tr. 13). Plaintiff appealed the cessation of benefits through the administrative process. Plaintiff then sought further review in this court. This court affirmed the ALJ's January 20, 2004, unfavorable decision on July 22, 2005. Plaintiff did not pursue his available appeal rights. The current ALJ therefore found that the earliest onset date that plaintiff could establish was January 21, 2004. Therefore the relevant time period for the current applications before this court is January 21, 2004, through December 22, 2006.

reconsideration. Pursuant to plaintiff's request, a hearing de novo before an administrative law judge (ALJ) was held on April 6, 2006, at which plaintiff, with the help of a non-attorney representative, appeared and testified. (Tr. 546-563).  After additional evidence was obtained a supplemental hearing was held on November 7, 2006. (Tr. 564-582).

By written decision dated December 22, 2006, the ALJ found that during the relevant time period plaintiff had an impairment or combination of impairments that were severe.  (Tr. 16).  However, after reviewing all of the evidence presented, he determined that plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4.  (Tr. 17).  The ALJ found plaintiff retained the residual functional capacity (RFC) to perform a wide range of sedentary work. (Tr. 18). Specifically, the ALJ found plaintiff could lift/carry up to ten pounds occasionally, less than ten pounds frequently; could sit six hours out of an eight-hour workday; and could stand/walk two hours out of an eight-hour workday. The ALJ further found plaintiff could occasionally climb, balance, stoop, kneel, crouch and crawl. (Tr. 18). With regard to mental limitations, the ALJ found plaintiff was able to understand, remember and carry out simple instructions; was mildly limited in his ability to understand, remember and carry out detailed instructions, and to make judgment on simple work-related decisions; and was moderately limited in his ability to interact appropriately with the public, supervisors and co-workers, to respond appropriately to work pressures in a usual work setting, and to respond appropriately to changes in a routine work setting.  With the help of vocational expert testimony, the ALJ determined plaintiff could perform other work as a bench assembler, production inspector/checker or examiner and a surveillance system monitor. (Tr. 18, 580).

Plaintiff appealed the decision of the ALJ to the Appeals Council. When the Appeals Council declined review on May 15, 2007, the ALJ's decision became the final action of the Commissioner. (Tr. 5-7). Plaintiff now seeks judicial review of that decision. (Doc. #1). Both parties submitted appeal briefs. (Doc. # 8, 9). This case is before the undersigned for report and recommendation.

**Evidence Presented:**

The two administrative hearings of record were held on April 6, 2006, and November 7, 2006, respectively. (Tr. 548-582). At the time of first hearing before the ALJ on April 6, 2006, plaintiff was thirty-four years of age and had obtained an eleventh grade education.[2] (Tr. 552, 570). The record reflects plaintiff's past relevant work consisted of work as a heavy equipment operator and a blaster. (Tr. 578-579).

The pertinent medical evidence in this case reflects the following. Progress notes dated March 1, 2004, report plaintiff's complaints right foot pain and left knee, shoulder and elbow pain. (Tr. 461). Plaintiff reported he was unable to tolerate weight on his right foot. Plaintiff reported he was unable to sleep due to pain. Plaintiff reported he had to lean on the cart while in the grocery store. Dr. Thomas Atkinson noted plaintiff was holding his left arm to his chest and that plaintiff had a decreased range of motion of the left shoulder. Dr. Atkinson noted blood tests including plaintiff's RA, was within normal limits. Dr. Atkinson diagnosed plaintiff with musculoskeletal pain of unclear etiology. Plaintiff was prescribed medication.

On July 9, 2004, plaintiff underwent a consultative general physical examination performed by Dr. Randy Conover. (Tr. 489-495). Plaintiff reported he could only sit for twenty

---

[2] Plaintiff reported he took some special education classes. (Tr. 569).

minutes, stand for five minutes and walk one hundred yards due to back pain. (Tr. 489). Plaintiff reported his hands and feet swell every morning and that he experiences parasthesia in his hands due to some activities. Plaintiff reported he was smoking a package and a half of cigarettes a day.

Upon examination, Dr. Conover noted plaintiff had normal range of motion of the cervical spine, but limited flexion of the lumbar spine to 75 degrees out of 90 degrees. (Tr. 492). No evidence of muscle spasm was noted, and straight leg raising was normal. Plaintiff had normal range of motion of all extremities with no evidence of joint abnormality or deformity. Neurologically, plaintiff had 2+ reflexes and no muscle weakness, muscle atrophy, or sensory abnormalities. Plaintiff's gait and coordination were stable. Plaintiff's limb function was also normal with the exception that his grip strength was 95% of normal. Plaintiff was alert and oriented times three, and he demonstrated no evidence of psychosis. Dr. Conover diagnosed plaintiff with tendonitis of the left shoulder, carpal tunnel syndrome left greater than right, right lat epicondilitis, history of TMJ, history of migraines and chronic back pain musculoskeletal. Dr. Conover opined plaintiff had mild limitations with standing and walking; mild to moderate limitations with lifting; and moderate limitations with handling and fingering. Dr. Conover recommended plaintiff have RF and ANA drawn.

With regard to plaintiff's complaints of depression, the record shows that plaintiff began seeking treatment at Ozark Guidance Center (OGC) on December 20, 2005. (Tr. 514). Plaintiff requested help in learning to accept and deal effectively with his physical difficulties. Plaintiff also reported having some long term memory problems. Plaintiff reported he was not taking pain medication because he could not go back to his doctor because he owed his doctor money. The examiner, Ms. Retha Gregory, MED., LPC, noted plaintiff was shy and reluctant to admit being

physically handicapped. Ms. Gregory noted plaintiff was wearing soiled clothing, was unshaven and unkempt. Plaintiff was referred for therapy and to Arkansas Rehabilitation Services. Plaintiff was also put on a the list to see a psychiatrist. Plaintiff was made aware of the organizations to help with medication and medical services. Plaintiff was assessed with a global assessment of functioning (GAF) of 50. (Tr. 512).

On December 21, 2005, Ms. Gregory noted plaintiff did not have an appointment but showed up wanting to talk with her. (Tr. 510). Plaintiff reported he had been to Arkansas Rehabilitation Services and was told by a representative that there was nothing they could do for him. Plaintiff reported that he guessed he would have to keep collecting cans and copper. Plaintiff denied suicidal or homicidal ideation. Ms. Gregory noted plaintiff would be referred for therapy and a psychiatric evaluation.

On March 20, 2006, plaintiff presented to Dr. Atkinson's office with complaints of back pain and left sided pain. (Tr. 515). Plaintiff reported due to his back pain he was unable to sleep and that Mobic provided minimal help. On examination, plaintiff demonstrated pain in the lumbar spine at L1-L4. Dr. Atkinson assessed osteoarthritis and started plaintiff on medication.

The record shows that plaintiff attended therapy sessions at OGC on January 13, 2006, and April 3, 2006. (Tr.520-523). As of April 3, 2006, plaintiff was motivated, attentive, no danger to himself or others, adjusting to his situation, and oriented to time, place, and person (Tr. 520).

On June 7, 2006, plaintiff underwent a consultative psychological evaluation performed by Dr. Martin T. Faitak. (Tr. 524-527). Plaintiff reported he was unable to work due to bulging discs, bone spurs, rheumatoid arthritis, TMJ and migraine headaches. Plaintiff reported he lived

by himself and that he was typically able to do laundry, wash dishes, vacuum, take out the trash, do gardening work, pay bills and do his own cooking. Plaintiff reported he rarely or never made his bed, ironed clothes or did house or car maintenance. Plaintiff reported his daytime activities involved fishing and gardening. In the evening, plaintiff reported he fed his animals and watched television. Plaintiff reported he sometimes visited friends and family.

      Dr. Faitak reported that plaintiff was friendly and cooperative with good eye contact. On the Wechsler Adult Intelligence Scale - Third Edition, plaintiff achieved a verbal IQ of 85, a performance IQ of 106, and a full scale IQ of 94, placing him in the average range of intellectual functioning. On the Beck Depression Inventory II and Beck Anxiety Inventory, plaintiff demonstrated severe depression and moderate anxiety. Dr. Faitak concluded that in terms of skills and capacities normally required for work that plaintiff appeared to have strength in his cooperation, perseverance, and concentration. Plaintiff appeared to have weaknesses in his physical abilities, abstract reasoning, self-esteem, social comfort, and mood. Dr. Faitak recommended treatment for depression, to include medication and counseling. Dr. Faitak also thought involvement in a pain management clinic would help plaintiff deal with his physical symptoms. Dr. Faitak also thought involvement in more social activities could increase plaintiff's range of affect.

      Dr. Faitak also completed a Medical Source Statement Of Ability To Do Work-Related Activities (Mental), and concluded that plaintiff had no limitation in his ability to understand, remember, and carry out short, simple instructions, and had slight limitation in his ability to understand, remember, and carry out detailed instructions. Dr. Faitak further found slight limitation in plaintiff's ability to make judgments on simple work related decisions, and

moderate limitation in his ability to respond appropriately with the public, supervision, co-workers, and work pressure in a work setting. (Tr. 528-529).

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3),

7

1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

**Discussion:**

We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that

[a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible. The testimony presented at the hearings as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

The medical evidence of record indicates plaintiff was injured on-the-job in when a rock fell on his head in 1998. During the relevant time period; however, plaintiff sought little treatment for his back, foot, and left-sided pain, arm weakness or headaches. *Casey v. Astrue*, 503 F.3d 687, 693 (8th Cir. 2007) (citations omitted). In July of 2004, Dr. Conover, a consultative examiner, noted plaintiff had normal range of motion of the cervical spine, but limited flexion of the lumbar spine to 75 degrees out of 90 degrees. Dr. Conover observed no evidence of muscle spasm and plaintiffs' straight leg raising was normal. Plaintiff had normal range of motion of all extremities with no evidence of joint abnormality or deformity. Neurologically, plaintiff had 2+ reflexes and no muscle weakness, muscle atrophy, or sensory abnormalities. Plaintiff's gait and coordination were stable. Plaintiff's limb function was also normal with the exception that his grip strength was 95% of normal. The record shows plaintiff did not seek treatment for his physical impairments again until March of 2006. At that time, Dr. Atkinson diagnosed plaintiff with osteoarthritis and prescribed medication. There is no indication that plaintiff sought treatment again during the relevant time period. . *See Novotny v. Chater*, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam) (failure seek treatment inconsistent w/allegations of pain)

AO72A
(Rev. 8/82)

Plaintiff's reports of his daily activities are also inconsistent with a finding of disability. In November of 2006, plaintiff testified that his brother and friends helped him with feeding his animals and cutting wood and that he ate one meal a day with his parents. (Tr. 573-575). However, in July of 2006, plaintiff reported to Dr. Faitak that he lived by himself and was typically able to do laundry, wash dishes, vacuum, take out the trash, do gardening work, pay bills and do his own cooking. Plaintiff also reported his daytime activities involved fishing and gardening. In the evening, plaintiff reported he fed his animals and watched television. Plaintiff reported he sometimes visited friends and family. We would point out there is no evidence of record showing plaintiff had a worsening of his condition after his July of 2006 examination with Dr. Faitak. Further, this level of activity belies plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a plaintiff's subjective allegations of disability prior to June 30, 2002. *See Hutton v. Apfel*, 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection of claimant's application supported by substantial evidence where daily activities– making breakfast, washing dishes and clothes, visiting friends, watching television and driving-were inconsistent with claim of total disability); *See Polaski* at 1322.

Although plaintiff contends that his failure to seek medical treatment is excused by his inability to afford treatment during the relevant time period, plaintiff has put forth no evidence to show that he has sought low-cost medical treatment or been denied treatment due to his lack of funds. *Murphy v. Sullivan*, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship). The record clearly shows plaintiff was

given information on free clinics and organizations that would help plaintiff obtain medication and medical treatment. (Tr. 512). There is also evidence showing plaintiff continued to smoke throughout the relevant time period. As such, we cannot say that his financial situation prevented him from receiving medical treatment.

With regard to plaintiff's disabling depression, the record fails to show plaintiff sought on-going and consistent treatment for depression. Plaintiff went to an initial evaluation and then three therapy sessions during the relevant time period. Plaintiff also underwent a consultative psychological evaluation in July of 2006. Dr. Faitak reported plaintiff fell within the average range of intellectual functioning. Dr. Faitak concluded that in terms of skills and capacities normally required for work that plaintiff appeared to have strength in his cooperation, perseverance, and concentration. Plaintiff appeared to have weaknesses in his physical abilities, abstract reasoning, self-esteem, social comfort, and mood. Dr. Faitak recommended treatment for depression, to include medication and counseling. Dr. Faitak also thought involvement in a pain management clinic would help plaintiff deal with his physical symptoms and that plaintiff's involvement in more social activities could increase plaintiff's range of affect. After reviewing the entire evidence of record, we find substantial evidence to support the ALJ's determination that plaintiff did not have a disabling mental impairment.

Therefore, although it is clear that plaintiff suffers with some degree of pain, he has not established that he is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a

finding of disabled). Neither the medical evidence nor the reports concerning his daily activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

We will next discuss the ALJ's RFC determination. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 416.945(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliam v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

In finding plaintiff able to perform a wide range of sedentary work, the ALJ considered plaintiff's subjective complaints, the medical records of his treating and examining physicians, and the evaluation of a non-examining consultant. The record reveals, Dr. Conover diagnosed

plaintiff with carpal tunnel syndrome; however, his examination notes reveal no limitations regarding plaintiff's upper extremities with the exception of a 5% decrease in grip strength. Dr. Conover also recommended plaintiff undergo blood tests including a rheumatoid factor and an ANA. The record reveals in April of 2003, plaintiff's rheumatoid factor was negative.

With regard to plaintiff's mental impairments, the ALJ addressed Dr. Faitak's findings and used those findings when determining plaintiff's RFC. Based on a full review of the entire evidence of record, our above discussion of the medical evidence and plaintiff's daily activities, we believe substantial evidence supports the ALJ's RFC assessment.

We also find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. (Tr. 92-94). *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). Accordingly, we find that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that plaintiff's impairments do not preclude him from performing other work in the national economy. *See Pickney*, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**Conclusion:**

Based on the foregoing, we recommend affirming the ALJ's decision and dismissing plaintiff's case with prejudice. **The parties have ten days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact.**

**The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 9th day of May 2008.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE